UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WAMEL ALLAH,

                    Plaintiff,                    **REPORT AND**
                                                                     **RECOMMENDATION**

v.

CAPTAIN GREIS, and                                    05-CV-0865A(M)
KEITH DUBRAY,

                    Defendants.

---

This case was referred to me by Hon. Richard J. Arcara to hear and report in accordance with 28 U.S.C. §636(b)(1) (Dkt. #34). Before me are plaintiff's motion for partial summary judgment as to liability (Dkt. #18) and defendants' cross-motion for summary judgment (Dkt. #25). For the following reasons, I recommend that plaintiff's motion be DENIED, and that defendants' cross-motion be GRANTED in part, and DENIED in part.

## BACKGROUND

Plaintiff, an inmate at the Lakeview Correctional Facility, commenced this action *pro se* pursuant to 42 U.S.C. §1983, alleging various due process violations resulting from a Tier III disciplinary hearing. The disciplinary hearing arose from a Misbehavior Report completed by Correction Counselor Hilda Ancelet, which alleged that on June 27, 2005, while she was attempting to complete her rounds, plaintiff

> "held a letter up to the window. Upon reading some of this letter I realized the content was sexually explicit. The letter stated that he knows I smell and taste exotic and that he would like to 'taste my

> feminine'. He slowly raised the letter up so that I could read it, he then turned the letter over to the other side so that I could read the back. Page two stated that he would like to get together with me. I ordered [plaintiff] to give me the letter but he refused" (Dkt. #1, Ex. A).

Following the incident, plaintiff's cell was searched by Sergeant Cybart and Officer Shilling. As a result of this search, Sgt. Cybart completed a Memorandum indicating that the search

> "failed to discover the letter he displayed to Counselor Ancelet. It is the determination of this Sgt that inmate Allah deposited this letter in the toilet and flushed it. I reasoned this as small pieces of torn-up paper were found on the floor near the toilet during the cell search" (Dkt. #20, Bates No. 000124).

The Misbehavior Report charged plaintiff with violating Inmate Rules 101.11 (Harassment); 101.10 (Inmate shall not solicit others to engage in sexual acts); and 106.10 (Direct Order) (Id.). Plaintiff was afforded an assistant for his defense of the Misbehavior Report (Id., Bates No. 000115). The disciplinary hearing was conducted before defendant Captain Phillip Greis, a DOCS hearing officer, on July 7 and 8, 2005 (Id., Bates Nos. 000012-108).

At the disciplinary hearing, plaintiff denied that he showed Counselor Ancelet an offensive note (Id., Bates Nos. 000010-11). His cellmate, Vincent Marquez, testified on his behalf, stating that he was present at the time of the incident, but did not observe the alleged harassment (Id., Bates Nos. 000018-28). Plaintiff also presented a surveillance video of the incident (Id., Bates Nos. 000034-41). Defendant Greis called Sgt. Cybart and Counselor Ancelet to testify, and they confirmed the factual allegations in their reports. However, plaintiff was not permitted to call two witnesses, Officer Shilling and Deputy Sheehan (Id., Bates Nos. 000065, 000102-103).

On the second day of the hearing, after all of the parties' witnesses had testified, defendant Greis expelled plaintiff from the hearing for "being continually being disruptive, argumentative and impeding of the hearing process . . ." (Id., Bates Nos. 000103, 000116). Thereafter, defendant Greis found plaintiff guilty of all counts in the Misbehavior Report, stating:

> "You have objected and argued throughout this entire process resulting in your removal from the hearing. Your numerous objections do not overrule the crux of this hearing - Did you harass a female counselor with a sexually explicit letter and then refuse to hand it over when ordered. I conclude that you did those things. Your witness has impeached his credibility by in our presence changing his testimony and by misleading with untruthfulness. I conclude with definite certainty that you harassed, refused direct order and did a sex offense. I found the counselor's testimony to be credible" (Id. at Bates Nos. 00114, 000107-108).

Plaintiff was sentenced to 100 days of SHU confinement (Dkt. #20, Bates No. 000113). Defendant Greis' determination was affirmed by defendant Keith Dubray, the Acting SHU Director (Dkt. #1, Ex. A1).

## DISCUSSION AND ANALYSIS

A.  **Summary Judgment Standard**

The standard to be applied on a motion for summary judgment in this Circuit is well settled. " 'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court

must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003) (quoting Marvel Characters v. Simon, 310 F. 3d 280, 285-86 (2d Cir. 2002)).

**B.    Plaintiff's Due Process Claim[1]**

A procedural due process violation occurs when the Government deprives a person of a protected life, liberty, or property interest without first providing that person with notice and an opportunity to be heard. See B.D. v. DeBuono, 130 F. Supp. 2d 401, 432-33 (S.D.N.Y. 2000).[2] It is well settled that inmates retain due process rights in prison disciplinary proceedings. See Porter v. Goord, 04-CV-485, 2004 WL 2271383, *2 (W.D.N.Y. Oct. 5, 2004) (quoting Hanrahan v. Doling, 331 F. 3d 93, 97 (2d Cir. 2003)). The Supreme Court has held that whenever an inmate is subjected to a prison disciplinary proceeding that might result in the deprivation of a liberty interest, prison officials must ensure that certain procedural safeguards

---

[1] In addition to alleging a Fourteenth Amendment Due Process claim, plaintiff's Complaint also alleges violations of the First, Fifth, and Eighth Amendments (Dkt. #1, pp. 5,18). However, because the parties' motions do not discuss these claims, I do not address them.

[2] With respect to any due process claim, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F. 2d 70, 72 (2d Cir. 1988). "An inmate has a protected liberty interest in not being confined only if the deprivation is atypical and significant . . ." Durran v. Selsky, 251 F. Supp. 2d 1208, 1214 (W.D.N.Y. 2003) (Larimer, J.). However, defendants do not seek summary judgment on that basis, and plaintiff's belated mention of the issue in a sur sur-reply (Dkt. #36) cannot be considered on these motions. See Local Rules of Civil Procedure for the Western District of New York, 7.1(c); National Fuel Gas Distribution Corp. v. TGX Corp., CV-84-1372, 1992 WL 49996, *2 (W.D.N.Y. March 2, 1992) (Elfvin, J.) ("[T]his Court will not consider such sur-reply in deciding the pending motion because [defendant] filed and served it without the leave of court.")

are in place. See Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The inmate is entitled to call witnesses, present documentary evidence, and to have the proceeding adjudicated by an impartial hearing officer. Id. at 566, 571.

### 1. Defendant Greis' Conduct

Plaintiff alleges various due process violations arising from defendant Greis' conduct at his disciplinary hearing, namely that defendant Greis was not impartial, that he improperly denied plaintiff the right to call witnesses, and that he wrongfully expelled plaintiff from the hearing.

"An inmate subject to a disciplinary hearing is entitled to, *inter alia*, an impartial hearing officer." Patterson v. Coughlin, 905 F. 2d 564, 569 (2d Cir. 1990); Reynoso v. Selsky, 02-CV-6318, 2007 WL 1237684, *3 (W.D.N.Y. April 27, 2007 ) (Siragusa, J.) ("An inmate is entitled to a fair and unbiased hearing officer' "). That entitlement " 'is a fundamental requirement of due process . . . fully applicable' in the prison context". Ames v. Artuz, 86-CIV-1924, 1989 WL 54114, *4 (S.D.N.Y. May 16, 1989) (Lowe, J.) (internal citations omitted). Although "any alleged bias or prejudice on the part of a decisionmaker 'must be evident from the record and cannot be based on speculation or inference' ", Reynoso, supra, 2007 WL 1237684 at *3, in this case there is ample evidence from which a jury could reasonably conclude that defendant Greis was biased against plaintiff:

- - He repeatedly belittled plaintiff ("go ahead and entertain me for a minute . . . . go ahead and jive" (Id., Bates Nos. 000067, 000079);[3] "cut to the chase . . . . The suspense is

---

[3] Not only are these statements demeaning to plaintiff, but his characterization of what plaintiff would offer as being "entertainment" or "jive" *before even hearing it* is a compelling indication that defendant Greis had already decided not to take plaintiff seriously, and had improperly prejudged the

killing me" (Id., Bates No. 000054); "you don't have a right to entertain me with things that are so off base that it breaks my heart to tell you that your objection's denied" (Id., Bates No. 000076); "I don't know how you got so spoiled on previous Hearings that you were able to walk around Hearing Officers like that, but this isn't who does that" (Id., Bates No. 000069);

- - He referred to plaintiff's evidence as "garbage" ("It's garbage" (Dkt. #20, Bates. No. 000068); "I am simply tired of listening to this garbage" (Id., Bates No. 000106)) and called one of plaintiff's witnesses a "peon" ("And what did you want that peon for though?") (Id., Bates No. 000016);

- - He interjected his own testimony into the record. When plaintiff attempted to ask Sgt. Cybart why he did not take photographs of the torn pieces of paper which he contended were the letter which plaintiff wrote to Counselor Ancelet, defendant Greis stated: "I will answer that on behalf of the Sergeant . . . I wouldn't want the Sergeant to waste film on something like that . . . . I would not want the Sergeant wasting film and costing the Department hundreds of dollars over the course of the year on something that nitpicky" (Id., Bates Nos. 000090, 000091); at one point he admonished plaintiff that "you may not object to my testimony" (Id., Bates No. 000060);

- - Although he told plaintiff that "you are entitled to ask questions" of the witnesses (Id., Bates No. 000041), he then proceeded to *change* some of the questions propounded by plaintiff. For example, plaintiff requested that he ask Counselor Ancelet whether

---

case. "Our conception of an impartial decisionmaker is one who, *inter alia*, does not prejudge the evidence and who cannot say . . . how he would assess evidence he has not yet seen." Patterson, supra, 905 F. 2d at 570.

anyone witnessed her ordering him to turn over the letter (Id., Bates No. 000060)[4]. Defendant Greis instead asked her whether she had ordered plaintiff to hand over the letter, to which she responded "yes, I did" (Id., Bates No. 000061). Having heard the question which plaintiff wanted to ask, Ms. Ancelet herself then stated "you want to know if I have a witness . . . . Is that what you want me to say" (Id.), but Greis cut her off, saying "No, No, No, please answer only those inquiries given to you by me . . . So you ordered the inmate to hand it over . . . . There it is . . . . There's your testimony" (Id.);

- - He attempted to steer Sgt. Cybart's testimony. He initially asked Sgt. Cybart whether "all you found waass (*sic*) pieces of paper on the toilet that caused you too (*sic*) First formulate and (*sic*) opinion and then later conclude that that was the note being written up and thrown in the toilet", to which Sgt. Cybart replied "Yes, Sir" (Id., Bates No. 000092). However, when Sgt. Cybart admitted that the cell search form makes no mention of the pieces of paper allegedly found around the toilet (Id., Bates No. 000099 - 100), defendant Greis then attempted to elicit an explanation from him that would contradict his earlier statement that he had concluded the pieces of paper came from plaintiff: "And would that be fair to say because you didn't conclude those papers were automatically Allah's they could have been Marquez's perhaps? . . . His bunky? (Id., Bates No. 000100). Sgt. Cybart never answered that question;

- - When plaintiff then requested "to call the Officer that did the cell search [Officer Shilling] as a witness" (Id., Bates No. 000102), defendant Greis denied that request on the ground that plaintiff did not know what his testimony would be (Id., Bates No. 000103).

---

[4] Defendant Greis had instructed plaintiff that "any question you ask has to go through me" (Id., Bates No. 000041).

When plaintiff attempted to explain ("Well, I would say his testimony . . .") (Id.), defendant Greis told him "Stop. I'm sorry, that wasn't subject to discussion. I just made a decision which means that you must sit there silently while I fill out form 2176 and thank you in advance for doing that." (Id.) When plaintiff persisted ("But how can I say something . . ."), defendant Greis told him to "please get up and leave the Hearing" (Id.). Given the puzzling absence of any reference to the torn up papers in the cell report, plaintiff's request to call Officer Shilling, who conducted the cell inspection and prepared the report, was not unreasonable, and the propriety of his expulsion from the hearing under these circumstances is questionable at best.[5] See Scott v. Coughlin, 78 F. Supp. 2d 299, 317-318 (S.D.N.Y. 2000) (finding a triable issue of fact as to whether the hearing officer's refusal to call a witness violated the plaintiff's due process rights);

- - He suggested that he didn't care about evidence which appeared to undercut the credibility of the complainant, Counselor Ancelet. Ms. Ancelet testified that she did not write certain comments on paperwork in front of plaintiff's cell:

> "ANCELOT:[6] "[T]hat's my handwriting and I wouldn't have written that in front of the cell outside the Gallery.
>
> GREIS: No, you would have done your paperwork. You would have written on your paperwork off the Gallery. I would have expected that.

---

[5] On earlier occasions during the hearing, defendant Greis had warned plaintiff that he was running out of patience, and had threatened to eject him (Id., Bates Nos. 000058, 000059, 000060, 000061, 000072, 000097). However, on none of these occasions did plaintiff's conduct appear to warrant the reaction which it elicited from defendant Greis. See Malik v. Tanner, 697 F. Supp. 1294, 1302 (S.D.N.Y. 1988) ("[A] prisoner may be excluded from a hearing if the hearing officer reasonably concludes that his presence would unduly threaten institutional safety or undermine correctional goals. The Court cautions, however, that *the circumstances justifying exclusion must remain narrow*" (emphasis added)).

[6] Although the hearing transcript refers to her as "Ancelot", the Misbehavior Report indicates that her name is "Ancelet".

ANCELOT: Right" (Id., Bates No. 000048).

However, when shown the videotape of the alleged incident in front of plaintiff's cell, defendant Greis admitted that "[i]t looks like she's writing something down" (Id., Bates No. 000039). The following colloquy then ensued:

> "GREIS: Did she happen to write this statement outside the cell that day?
>
> \* \* \*
>
> ALLAH: Yes, Yes, Yes
>
> \* \* \*
>
> GREIS: Okay, maybe that's what I saw.
>
> GREIS: I will be honest with you.
>
> (SHUFFLING OF PAPERS)
>
> GREIS: I'm not sure I care." (Id., Bates Nos. 000042 - 43).

While the evidence of defendant Greis' partiality is compelling, it not so conclusive as to warrant summary judgment in plaintiff's favor.[7] However, it is clearly sufficient to create a genuine issue of material fact justifying the denial of summary judgment to defendants.

---

[7] Moreover, in order to obtain summary judgment, plaintiff was obligated to show that "there is no genuine issue as to any material fact and that [he is] entitled to a judgment as a matter of law". Fed. R. Civ. P. 56(c). Not only has plaintiff failed to show as a matter of law that the hearing was improper, but he has also failed to show as a matter of law that the duration and circumstances of his SHU confinement rendered it "atypical", threreby triggering an entitlement to due process. See Sims v. Artuz, 230 F. 3d 14, 22 (2d Cir. 2000) ("Confinement in SHU may impose hardships that are atypical or significantly different from the burdens of ordinary prison confinement . . . . , but in order to determine whether or not there are such differences, the district court must make a fact-intensive inquiry." (internal citations omitted)); Durran, supra, 251 F. Supp. 2d at 1214 ("[C]ourts in this Circuit routinely hold that an inmate's confinement in special housing for 101 days or less, absent additional egregious circumstances, does not implicate a liberty interest" (internal quotation marks omitted)).

### 2. Defendant Dubray's Conduct

On the day following the hearing, plaintiff filed an appeal detailing at length the various due process violations (Dkt. #1, Ex. C). Despite his complaints, defendant Dubray affirmed defendant Greis' determination. Plaintiff argues that defendant Dubray "committed deprivations during the appeal process which sanctioned, ratified, condoned defendant Greis deprivations committed during the Tier III hearing" (Dkt. #18, p. 2).

Because I have found a question of fact as to whether defendant Greis' conduct violated plaintiff's due process rights, I likewise find that a triable issue of fact exists as to whether defendant Dubray's conduct in affirming defendant Greis' determination also violated plaintiff's due process rights. See Williams v. Smith, 781 F. 2d 319, 323 (2d Cir.1986) ("A supervisory official [may be personally involved in a constitutional deprivation by] after learning of the violation through a[n] . . . appeal, . . . fail[ing] to remedy the wrong"); Young v. Kihl, 720 F. Supp. 22, 23 (W.D.N.Y.1989) (Elfvin, J.) ("Upon learning of the misconduct, [the defendant] could have removed or mitigated its injurious effect by vacating the sentence imposed upon the plaintiff at the disciplinary hearing. The serving of the sentence imposed at the hearing-and the loss of liberty such occasioned-was a necessary element of any due process violation, and [the defendant's] alleged failure to vacate the sentence upon appeal operated to further any such violation.").

### 3. Qualified Immunity

The doctrine of qualified immunity shields government officials from liability for damages resulting from the performance of discretionary official functions if their conduct "does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Ayers v. Ryan</u>, 152 F. 3d 77, 82 (2d Cir. 1998); see <u>Rodriguez v. Phillips</u>, 66 F. 3d 470, 475 (2d Cir. 1995). Summary judgment may be granted on this ground if the defendant shows that (1) the asserted right was not clearly established, or (2) it was nonetheless objectively reasonable for the official to believe the conduct did not violate it. See <u>Rodriguez</u>, <u>supra</u>. To win summary judgment on the latter ground, the official "must produce such uncontroverted facts that a jury-drawing all inferences favorable to plaintiff-would have to conclude it was objectively reasonable for defendant to believe his actions did not violate an established federally protected right." <u>Id</u>.

Because there is, at minimum, a question as to whether defendant Greis was impartial - an obligation he should have been well aware of - he is not entitled to summary judgment on qualified immunity grounds. See <u>Francis v. Coughlin</u>, 891 F. 2d 43, 48 (2d Cir.1989) (holding that the existence of material issues of fact as to whether plaintiff was afforded a hearing before an impartial hearing officer precluded dismissal on grounds of qualified immunity); <u>Farid v. Goord</u>, 200 F. Supp. 2d 220, 246 (W.D.N.Y. 2002) (because "the basic standards regarding a prisoner's [due process rights] were articulated in <u>Wolff</u> . . . [i]t is objectively reasonable that defendant . . . would have been aware of such precedent. Thus, there are genuine issues of material fact" as to whether defendant's actions were reasonable). Similarly, I find no basis to grant summary judgement to defendant Dubray on qualified immunity grounds, insofar as there is a triable question of fact as to whether it was objectively reasonable for him to affirm defendant Greis' determination.

### 4. Untimeliness Of The Hearing

The Complaint alleges that the hearing was commenced beyond the seven-day requirement of 7 N.Y.C.R.R. §251-5.1(a) (Dkt. #1, ¶11). In response, defendants contend that defendant Greis properly determined that the seven-day requirement did not apply because plaintiff was confined on a separate charge at the time of the Misbehavior Report (Dkt. #27, Point IV).

7 N.Y.C.R.R. §251-5.1(a) provides:

> "Where an inmate is confined pending a disciplinary hearing or superintendent's hearing, the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said disciplinary hearing or superintendent's hearing, but, in no event may it be commenced beyond seven days of said confinement without authorization of the commissioner or his designee."

Here, plaintiff's disciplinary hearing was conducted 11 days after the Misbehavior Report. During this time frame, plaintiff's disciplinary record indicates that he was in SHU confinement, as a result of an unrelated April 12, 2005 disciplinary hearing (Dkt. #20, Bates No. 000131). Under these circumstances, plaintiff's right to timely hearing was not violated. See West v. Costello, 270 A.D. 2d 673, 674 (3 Dep't. 2000) (Because "petitioner was already confined in the special housing unit on an unrelated matter, the seven-day rule for commencing the hearing was inapplicable"); Lashway v. Brown, 281 A.D. 2d 735, 735 (3 Dep't. 2001) (same).

Moreover, "it is well established that a violation of 7 N.Y.C.R.R. §251-5.1, in and of itself, is not enough to establish a federal constitutional claim." Hernandez v. Tiede, No. 94-CV-908, 1996 WL 863453, *6 (W.D.N.Y. May 29, 1996) (Skretny, J.) (citing Soto v. Walker, 44 F. 3d 169, 173 (2d Cir. 1995)); see Donato v. Phillips, No. 04-CV-11602007 WL 168238, *6

(N.D.N.Y. January 18, 2007) ("The failure to provide a hearing precisely within the time specified in the regulations does not form the basis of a constitutional violation."). Consequently, this aspect of plaintiff's due process claim should be dismissed.

## CONCLUSION

For these reasons, I recommend that plaintiff's motion for partial summary judgment (Dkt. #18) be DENIED, and that defendants' cross-motion for summary judgment (Dkt. #25) be GRANTED to the extent that plaintiff contends that the untimeliness of the hearing violated his due process rights, and otherwise be DENIED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.</u>

**SO ORDERED.**

DATED:   August 31, 2007

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge